George L. Cobb, J.
The petitioner was formerly employed by the respondent Board of Education of Central School District No. 1 of the Towns of Saugerties, Woodstock and Ulster, Ulster County, New York (hereinafter Board of Education), as a school psychologist, having commenced his fourth year of service in the school district in the 1969-70 school year. By a resignation effective January 19,1970, of which he gave the Board of Education the required 30 days’ written notice, the petitioner terminated his employment in the district.
In this article 78 proceeding the petitioner seeks a judgment annulling a decision of the respondent Commissioner of Education (iCommissioner) made on August 20, 1970 in a proceeding brought before the Commissioner by the petitioner under section 310 of the Education Law. The petitioner had appealed to the Commissioner from the action of the respondent Board of Education in refusing to allow him sick leave credits for 29% days on which he was absent from his employment in the 1969-70 school year and in withholding salary from him accordingly. The petitioner also seeks to have the court direct the respondent Board of Education to reimburse him in the sum of $2,262.94, which he alleges is the amount of salary withheld. In his decision, the Commissioner directed the Board of Education to pay the petitioner for 4 days of his absence and sustained the action of the Board of Education in refusing to allow the petitioner use of sick leave credits for the remaining days in question.
The petitioner alleges, among other things, that the decision of the Commissioner is arbitrary and unreasonable, contrary to law, and in contravention of a contract between the respondent Board of Education and the bargaining agent for the unit including the petitioner, as such contract relates to sick leave.
Both respondents have moved to dismiss the petition on the ground that it does not state facts sufficient to constitute a cause of action (CPLR 7804, subd. [f]).
The petitioner shows that, as he alleged in his petition in the proceeding before the Commissioner, “ during the 1969-70 school year he suffered severe headaches and dizziness rendering brm unable to work ’ ’, for which he received chemotherapy from Dr. Albert O. Rossi, a neurologist, and that he was absent from his employment on November 5, 7, 13, 14, 18, 20, 21, 25 and December 1, 2, 5, 8, and 9 as a result of this illness; and that he “was injured on December 11, 1969 and was hospitalized *35 on December 11 and 12, and visited one Doctor Wenger on subsequent dates in December and January, 1970
From the record in the proceeding before the Commissioner, it appears that on December 10, 1969 the Director of Personnel Services of the Board of Education sent a memorandum to the petitioner which stated that it confirmed a verbal request of December 3, 1969 that the petitioner furnish the Board of Education ‘ ‘ with a statement from your physician regarding your absences this fall reported as illness ”. In response to this request, the petitioner submitted to the Board of Education a statement from Dr. Rossi dated December 15, 1969 that the petitioner ‘ ‘ has been under my care and on chemotherapy since Nov. 1, 1969. He will be on Valium, 5 mg. tw.d. for additional two months ”,
Thereafter, the Superintendent of Schools sent a memorandum to the petitioner dated December 19, 1969, referring to the memorandum of December 10,1969 and the verbal request of December 3,1969, and stating as follows:
“In accordance with the contract between the Board of Education and the Saugerties Teachers Association, that you provide the Director of Pupil Personnel Services with a statement from a physician substantiating your absence, reported due to illness, on the following dates: September 19, November 5, 7, 13 (half-day), 14, 18, 20, 21, 25, December 1, 2, 5, 8, 9. Since that time you have reported illness as a cause of absence on December 12, 15, 16, 17, and 18, 1969.
“On Wednesday, December 17, 1969, we received a statement from Dr. Rossi * * * stating that you have been under his care since November 1, 1969. This statement, however, does not verify that you were absent due to illness on these specific dates. As you have not supplied the statements requested, it appears that under the circumstances we must consider these absences as unexcused and that we must deduct from your salary accordingly. If you have evidence to contradict our assumption, you should present it at your very earliest convenience.
“ You are hereby required to submit a physician’s excuse for any further absences reported as due to illness until your date of resignation January 19, 1970.”
The petitioner then submitted to the Board of Education a statement from Dr. R. B. Wenger dated December 20, 1969, showing that the petitioner was under observation and treatment from December 11,1969 to December 20,1969. Some time on or after January 16, 1970 the petitioner submitted a further statement from Dr. Wenger .stating that the petitioner “ continues under treatment for * * * injury begun 12-11-69 ”.
*36 In its answer in the administrative proceeding, the respondent Board of Education alleged that, except for three days (September 19, December 12 and December 15, 1969) “the appellant has not shown sufficient medical proof that he was physically unable to perform his duties during the other days of his absence that would entitle him to payment ’ ’ and, in referring to the contract between the Board of Education and •the Saugerties Teachers Association, “ [t]he physicians’ certificates submitted by the appellant from Dr. Rossi and also from Dr. Wenger are insufficient to comply with the requirements of the contract”. The Board of Education alleged, further, that the position of the school district is shown in a resolution adopted by the Board of Education at a meeting on January 19, 1970, as follows: “In view of the unexplained absences of Dr. Robert O. Valachovic, school psychologist, on September 19, November 5, 7, 13 (% day), 14, 18, 20, 21, 25; December 1, 2, 5, 8, 9, 12, 15, 16, 17, 18, 19; January 5, 6, 7, 8, 9, 12, 13, 14, 15, and 16 and his failure to present proof of his inability to perform contracted services, the amount equivalent to his salary for the days of absence shall be retained by the District until proof as required under the contract between the Board of Education and the Saugerties Teachers Association be submitted.”
The petitioner submitted in the administrative proceeding a letter from Dr. Rossi, dated April 14, 1970, addressed to petitioner’s attorney, stating as follows :
“Mr. Valachovic was under my care from September 15, 1969 to December 16, 1969. In addition to these dates, I also examined him on October 9th, 27th and 29th, and November 5th, 1969. My diagnosis was neuralgia, cervical roots, with muscle spasm due to reflex action. I prescribed Valium, 5 mg. tablets twice daily; this had to be increased to 10 mgs. twice daily to obtain therapeutic relief.
“ The neurological signs and symptoms of neurolgia were quite evident during that period of time and were not in my opinion subjective or neurotic overlays; objectively there was spasm of cervical musculature and limitation of motion of cervical spine.”
There was also submitted by petitioner a statement from Frank J. Litynski, D.M.D., of Johnstown, New York, which shows that on September 19, 1969 the petitioner was a patient in his office and that he underwent a gingivectomy.
The petitioner alleged that he had accumulated 25 days of sick leave as of June 30,1969, and that he acquired an additional 10 days of sick leave at the commencement of the 1969-70 school *37 year, pursuant to section 3005-b of the Education Law and the terms of the agreement between the Board of Education and the Saugerties Teachers Association, and he concluded that at the commencement of the 1969-70 school year he had at his disposal 35 days of sick leave. He denied traveling on personal business on days claimed as sick leave, as was alleged by the Board of Education.
In sustaining the action of the Board of Education, the Commissioner, in his decision, set forth the various days on which the absences not explained to the satisfaction of the Board of Education were alleged to have occurred (September 19, November 5, 7, 13 [half-day], 14, 18, 20, 21, 25; December 1, 2, 5, 8, 9, 12, 15, 16, 17, 18, 19, 1969; and January 5, 6, 7, 8, 9, 12, 13, 14, 15, and 16, 1970) and referred to the sick leave provision (art. 11) of the agreement between the Board of Education and the Saugerties Teachers Association, and further stated as follows:
“ The board, acting on the basis of the contract clause set forth above, has refused to allow use of sick leave for any of these days absent a physician’s certificate. In view of the large number of absences here, I find that the Board was not arbitrary.
“Respondent concedes that petitioner is entitled to be paid for December 15, a snow day, and for September 19 and December 12, for which days the proper certificates have been submitted. I further find that petitioner is entitled to be paid for November 5, since the statement of Dr. Albert 0. Rossi, dated April 14, 1970 and submitted as an exhibit to the affidavit of petitioner’s attorney, indicates that petitioner was seen by the doctor on that date.
“ In view of the number of days petitioner was absent, and since there is no evidence in the record that on any days other than those mentioned in the preceding paragraph petitioner was under a doctor’s care, I cannot conclude that respondent acted arbitrarily in refusing to allow petitioner use of sick leave credits for the remaining days in question.”
Section 310 of the Education Law provides that the decision of the Commissioner of Education on an appeal to him under this statute shall be final and conclusive, and not subject to question or review in any place or court whatever. And the Court of Appeals has stated in Matter of Ocean Hill-Brownsville Governing Bd. v. Board of Educ. of City of N. Y. (23 N Y 2d 483, 485) that the concern and exercise of power of the Commissioner of Education over the educational system has been recognized definitively by the court, subject to markedly limited *38 judicial review as compared with other administrative agencies of government. It has been held, however, that a determination of the Commissioner does not have finality and may be reviewed if such determination is shown to be purely arbitrary (Matter of Vetere v. Allen, 15 N Y 2d 259, 267; Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, 136).
The issue to be passed on by the court, therefore, is whether the Commissioner’s decision which is being considered in this proceeding is 1 ‘ purely arbitrary ’ ’. As to the factual determination by the Commissioner, to annul the decision the court must find that it depends ‘ ‘ upon such arbitrary and naked power that no reasonable man could reach the result” (Matter of Lubell v. Nyquist, 31 A D 2d 569, mot. for lv. to app. den. 23 N Y 2d 645; Matter of Cochran v. Levy, 175 Misc. 666, 668, affd. 263 App. Div. 921).
The petitioner alleges .that the Commissioner’s decision is arbitrary and illegal ‘1 in that it is contra to the right to leave on account of illness provided for in the Education Law, § 3005-b ’ ’. Section 3005-b of the Education Law, which provides for leaves ■of absence for teachers for personal illness, reads, in relevant part, as follows: “ The school authorities of each school district * * * shall allow each teacher employed by the district sick leave without loss of salary for at least ten working days in any year on account of personal sickness or physical disability; and provided, further, that if any employee does not use the full amount of sick leave allowed in any school year, the amount not used shall be accumulated from year to year and used, if needed, up to a total of not less than one hundred fifty working days.”
The Legislature, in enacting this statute, which mandates at least 10 days ’ sick leave in each year, did not, however, abrogate the discretion of the Board of Education to determine when an employee’s application for compensation following absence was in fact based on sickness .(see Matter of Garber v. Board of Educ. of City of N. Y., 50 Misc 2d 711, 713, in discussing section 3107 of the Education Law).
The collective bargaining agreement between the Board of Education and the Saugerties Teachers Association which was in effect for the 1969-70 school year contains (art. 11) the following provision with respect to sick leave:
“ 1. Sick Leave
“ School personnel shall be granted sick leave with pay for ten days per year accumulative to a total of 150 days. A physician’s certificate shall be required as proof of any illness exceeding seven calendar days and may be requested for lesser periods.” (Emphasis .supplied.)
*39 In Ms decision, the Commissioner found that the Board of Education had used this provision of the collective bargaining agreement as the authority for its action in refusing to allow sick leave credits to the petitioner for the days in question and the Commissioner held, on the basis of the record before him, that the Board of Education was not arbitrary in its interpretation of this sick leave provision of the contract.
The Commissioner has determined, in effect, that the Board of Education’s interpretation of the requirements of the sick leave provision of the contract was reasonable. The court is unable to conclude that this determination on the part of the Commissioner is c< purely arbitrary ” and it is without power to disturb it on that basis.
The petitioner contends that it was improper for the Board of Education to withhold salary from him for the 29% days on which he was absent from his employment and that the approval of such action by the Commissioner was inconsistent with his decision in Matter of Steinberg (8 Ed. Dept. Rep. 169, reopening den. 9 Ed. Dept. Bep. 22). In Steinberg, where the Commissioner ruled that a school district was not “ entitled to recover the alleged overpayment by the simple remedy of setoff from ensuing salary” without the teacher’s consent, there was an existing employment relationship at the time the case was heard by the Commissioner. This case is clearly distingMshable on the facts from Steinberg. In this case it appears that the withholding of petitioner’s salary by the Board of Education did not commence until after petitioner had given notice that he would resign on 'January 19, 1970, and when the appeal was heard by the Commissioner the petitioner had already resigned from his position. Under these circumstances, the approval by the Commissioner of the withholding of salary from the petitioner for the days on which he found the petitioner was not entitled to sick leave credit does not constitute a “ purely arbitrary ” act by the Commissioner.
After giving full consideration to the petition and the supporting papers, the court finds that the petitioner has made no showing which would justify judicial interference with the Commissioner’s decision. The court finds that such decision, being neither arbitrary nor illegal, must be given the finality required by section 310 of the Education Law.
With Ms affidavit verified March 24, 1971, the petitioner has submitted a coy of “ Notice that payment of compensation for disability has been stopped or modified ’ ’, issued by the State Workmen’s Compensation Board, by which he purports to show that an award was made to him for temporary disability *40 for the period from December 15, 1969 to January 19, 1970. As this was not before the Commissioner in the administrative proceeding, it has not been considered by the court.
In accordance with the foregoing, the petition is denied and the proceeding is dismissed.